MIKE SCHLEMER, INC., Plaintiff and Counterdefendant-Appellant and Cross-Appellee, v. JOHN PULIZOS, Defendant and Counterplaintiff and Cross-Plaintiff-Appellee and Cross-Appellant (Jo Ann Pulizos, Defendant and Counterplaintiff and Cross-Plaintiff-Appellee; Walter Hale, Ltd., Defendant and Cross-Defendant-Appellee and Cross-Appellant).

Fifth District    No. 5—92—0663

Opinion filed November 4, 1994.

Gail Gaus Renshaw, of Lakin Law Firm, P.C., of Wood River, for appellant.

L. James Struif, of Struif Law Offices, of Alton, and Patrick O. Boyle, of East Alton, for appellees.

JUSTICE MAAG delivered the opinion of the court:

Mike Schlemer, as the president and sole shareholder of Mike Schlemer, Inc. (plaintiff or Schlemer), appeals from an order of the circuit court of Madison County denying Schlemer's request for damages for lost profits. By cross-appeal, defendants, John Pulizos and Walter Hale, Ltd., raise two issues; (1) whether the trial court erred in finding that a contract had been made; and (2) whether the damages awarded were proven by the evidence submitted.

John Pulizos and Jo Ann Pulizos, husband and wife, listed a four-family residential property in Madison County for sale through Walter Hale, Ltd. (Hale), on May 9, 1985. Initially the property was listed for sale at a price of $27,500. Subsequently the price was reduced to $25,500, and the listing was extended through the end of 1986.

Without a written listing agreement, Hale continued to try to sell the property in early 1987. On January 13, 1987, Schlemer submitted an offer of $15,000 through Realty World to Hale. John and Jo Ann Pulizos countered with an oral offer to sell for $24,500.

Thereafter, on February 20, 1987, Schlemer submitted a second offer through Realty World which is the basis for the present controversy. This offer contained a purchase price of $19,000 and two contingencies that are not germane to our inquiry. John and Jo Ann Pulizos orally, in a phone conversation with a sales agent for Hale, accepted this offer.

John Pulizos went to Hale's office on his way to work and signed an acceptance of the offer on February 24, 1987. John Pulizos was in a hurry, did not read the contract, and left the original signed document in the Hale office and took a signed copy to his wife. Jo Ann Pulizos never signed an acceptance of the offer, and the original copy signed by John Pulizos never left the Hale office.

On February 26, 1987, the property at issue was damaged by fire. Schlemer contacted John Pulizos concerning fire-damage estimates. Both parties obtained estimates and discussed a division of fire-insurance proceeds in connection with a sale of the property. Sometime in March of 1987 Schlemer demanded the property for $19,000 plus the total fire-insurance proceeds. John and Jo Ann Pulizos refused to convey the property and surrender the fire-insurance proceeds. Both sides retained attorneys.

Schlemer's attorney sent a letter to Hale on April 10, 1987, requesting a sale of the property for $19,000 and the fire-insurance proceeds. The attorney for John and Jo Ann Pulizos replied by letter stating that there was no contract for sale due to the lack of acceptance by Jo Ann.

During January 1992, John and Jo Ann Pulizos sold the property to another buyer for $19,000.

Schlemer filed a complaint against John and Jo Ann Pulizos seeking specific performance and damages for breach of a real estate sales contract. The complaint was amended to add defendant Hale, seeking damages under an agency theory.

The trial court directed a verdict in favor of Jo Ann Pulizos and denied Schlemer's request for specific performance. The trial court directed a verdict against John Pulizos and Hale, finding them jointly and severally liable to Schlemer in the sum of $3,500. Judgment was entered for Schlemer and against defendants John Pulizos and Hale in the sum of $3,500 on June 25, 1992. The instant appeal ensued.

For the reasons that follow, we reverse the decision of the trial court. It is apparent to us that no contract was formed between John Pulizos and Schlemer.

In finding a contract between John Pulizos and Schlemer, the trial court held, "The contract executed by Mr. Pulizos was really not complete, but *** the subsequent actions of Mr. Pulizos[,] instigated by the premature actions of Walter Hale, Ltd., advising the plaintiff that there was a 'contract[,]' and Mr. Pulizos['] acquiescence as to a contract upon being then contacted by plaintiff [gave rise to a contract]."

There is no dispute that Schlemer's second offer to purchase the property was just that, an offer to purchase the entire property for $19,000. There is also no dispute that John Pulizos and Jo Ann Pulizos owned the property in joint tenancy. A valid conveyance by one joint tenant to a stranger works a severance and creates a tenancy in common between the other joint tenant and the stranger. (*Porter v. Porter* (1942), 381 Ill. 322, 45 N.E.2d 635.) Thus, John Pulizos could convey his interest in the property to Schlemer, but his interest was less than the entire property.

As a general rule, in order to constitute a contract, an offer must be accepted. (*Zinni v. Royal Lincoln-Mercury, Inc.* (1980), 84 Ill. App. 3d 1093, 406 N.E.2d 212.) The acceptance must in every respect meet and correspond with the offer, neither falling short of nor going beyond the terms proposed, but exactly meeting them at all points and closing with them just as they stand. (*Glabman v. Bouhall* (1980), 81 Ill. App. 3d 966, 401 N.E.2d 990.) The acceptance must conform exactly to the offer (*Whitelaw v. Brady* (1954), 3 Ill. 2d 583, 121 N.E.2d 785), and it must be unequivocal. *Milani v. Proesel* (1958), 15 Ill. 2d 423, 155 N.E.2d 38.

Simply stated, no contract was formed because Schlemer's offer was to purchase the entire property for $19,000, and John Pulizos' acceptance did not meet and correspond with that offer. In other

words, Schlemer was offering to buy the entire property for $19,000, and John Pulizos by signing the agreement accepted to sell his interest in the property, which was not the entire or whole property. Accordingly, we find that no contract was formed, and we reverse the judgment of the trial court.

Reversed.

WELCH and GOLDENHERSH, JJ., concur.